USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 08/31/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
:
MICHAEL P. THOMAS,                                                 :
                                                                   :
                              Plaintiff,                           :    15-CV-8934 (JMF)
                                                                   :
         -v-                                                       :    MEMORANDUM OPINION
                                                                   :            AND ORDER
NEW YORK CITY DEPARTMENT OF EDUCATION                              :
et al.,                                                            :
                                                                   :
                              Defendants.                          :
                                                                   :
-------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      This case is the third in a series of cases in this Court (and at least the *thirtieth* proceeding overall) that Plaintiff Michael Thomas, a former public school teacher proceeding *pro se*, has brought against the New York City Department of Education (the "DOE") and the administration of the school where he once taught, the Manhattan Center for Science and Mathematics ("MCSM"). (Am. Compl. (Docket No. 25) ¶ 199). In this case, Thomas alleges that the DOE, various DOE and MCSM officials, and Stephen Koss, a private citizen and the former President of MCSM's Parent-Teacher Association ("PTA"), violated his First Amendment rights by retaliating against him for alleging improprieties in MCSM's administration of certain federal funding. Defendants now move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Amended Complaint, arguing — among other things — that Thomas's claims are untimely. (Docket Nos. 22, 26, 27). For the reasons that follow, the Court agrees, so Defendants' motions are GRANTED and the Amended Complaint is dismissed in full.

## BACKGROUND

Generally, in considering a motion pursuant to Rule 12(b)(6), courts are limited to the facts alleged in the complaint and are required to accept those facts as true. *See, e.g.*, *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009). A court may, however, consider documents attached to the complaint, statements or documents incorporated into the complaint by reference, matters of which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit. *See, e.g.*, *Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (applying rule to district courts). In addition, because a *pro se* plaintiff's allegations must be construed liberally, it is appropriate for a court to consider factual allegations made in a *pro se* plaintiff's opposition papers, as long as the allegations are consistent with the complaint. *See, e.g.*, *Braxton v. Nichols*, No. 08-CV-8568 (PGG), 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18, 2010). Notably, when a court considers documents outside the four corners of a complaint, it is not required to accept as true facts alleged in the complaint that are contradicted by those documents. *See, e.g.*, *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 149 n.1 (2d Cir. 2012). Accordingly, the following facts are taken from the Amended Complaint, exhibits attached thereto, Thomas's submissions in opposition to Defendants' motion (to the extent they are consistent with the Amended Complaint), and documents of which the Court may take judicial notice, including prior litigation between the parties. *See, e.g., Gertskis v. N.Y. Dep't of Health & Mental Hygiene,* No. 13-CV-2024 (JMF), 2014 WL 2933149, at *1 (S.D.N.Y. June 27, 2014). Further, the facts in the

Amended Complaint are assumed to be true unless they are contradicted by documents the Court may consider, including documents attached to the Amended Complaint.

Thomas was a mathematics teacher at MCSM from 1989 through his retirement in July 2012. (Am. Compl. ¶ 7). This case arises from his activities in 2006 and 2007, when he made various allegations — in letters and more formal complaints — about MCSM's administration of "Title I" funding, a form of federal assistance. (*Id.* ¶¶ 18, 30, 35-40, 43-44, 46-49, 52-53, 55-56). Thomas alleges that, in retaliation for those activities (the details of which are unimportant for purposes of this motion), Defendants entered into a conspiracy to have him removed from MCSM. More specifically, he alleges that, in February 2008, Koss — then President of the MCSM PTA — sent him a letter conveying frustration with "MCSM teachers' repeated refusal" to adopt changes to the school's Title I program. (*Id.* ¶ 79). In response, Thomas sent Koss copies of his various letters and complaints. (*Id.* ¶ 80). After reviewing the materials, however, Koss discussed Thomas's activities — which he viewed as improper and troubling — with Defendant David Jimenez, MCSM's Principal, and Defendant Charles Kwan, MCSM's Assistant Principal of Mathematics. (*See id.* ¶ 86, 219; Mem. Law Opp'n Defs.' Mots. To Dismiss Am. Compl. (Docket No. 35) ("Pl.'s Opp'n") 3-4). In turn, Jimenez and Kwan informed Koss that Thomas had improperly lowered Regents examination scores to keep students from passing (a charge that was later found to be unsubstantiated). (Am. Compl. ¶¶ 151-52, 219).

On February 29, 2008, Koss sent an e-mail to the PTA Executive Board describing Thomas's activities and five potential courses of action that the Board could pursue in response, two of which involved taking action to get Thomas removed from MCSM. (*Id.*, Ex. 57, at 1-3). After receiving Koss's e-mail, the PTA Board chose to write a letter to Jimenez detailing its concerns about Thomas. (*See id.*, Ex. 57, at 4-18). On March 14, 2008, the Board sent the letter

3

to Jimenez (a copy of which Koss had shared with Jimenez in advance); it included descriptions of Thomas's letter-writing campaign and his alleged "effort to 'down-grade' the test scores of students" on a standardized math test.  (*Id.*, Ex. 55).  That same month, Thomas became the target of several investigations in response to both Koss's allegation that he had improperly lowered test scores on Regents examinations and allegations by students that he had been verbally abusive and used corporal punishment.  (*Id.* ¶¶ 89, 96-97, 127, 143).  Additionally, the following month, Thomas was ordered to submit to a psychological examination.  (*See id.* ¶¶ 149-150).  Pending resolution of the investigations, Thomas was sent in April 2008 to a temporary reassignment center — commonly known as the "rubber room" — where he remained for seventeen months.  (*Id.* ¶¶ 137, 190-98).

Since that time, Thomas has doggedly pursued various remedies — in multiple fora, including this Court — for his temporary reassignment.  Indeed, by his own account he has "obsessive[ly]" brought "over 30 proceedings and actions . . . against the DOE" and related parties.  (*Id.* ¶¶ 199-200).  Most relevant here, in August 2010, he filed a (renewed) whistleblower complaint with the Special Commissioner of Investigations for the New York City School District ("SCI") alleging that his reassignment to the rubber room was retaliation for his activities relating to the Title I funding.  (*See id.* ¶¶ 160, 163-164, 167, 170).  As reflected in SCI's denial of the complaint dated November 29, 2011 (a decision that was subsequently affirmed by the state courts), Thomas based his allegations in part on the PTA Board's letter of March 14, 2008, which he described as "request[ing]" that he be investigated "for lowering Regents examination grades in order to keep some students from passing."  (*Id.*, Ex. 43 ("2011 Whistleblower Decision"), at 1; *see* Am. Compl. ¶¶ 172-176).  Thomas, however, did not

4

actually see the March 14, 2008 letter itself until July 17, 2015, when he obtained a copy pursuant to New York's Freedom of Information Law ("FOIL"). (*Id.* ¶¶ 206-216).

Thomas filed this action on November 13, 2015, alleging First Amendment retaliation pursuant to Title 42, United States Code, Section 1983, and four state-law claims. (Compl., (Docket No. 1)). After Defendants moved to dismiss, Thomas amended his complaint, dropping all but the First Amendment retaliation claim.

## LEGAL STANDARDS

In evaluating a motion to dismiss, a court must accept all facts set forth in the complaint as true and draw all reasonable inferences in the plaintiff's favor. See, e.g., *Burch v. Pioneer Credit Recovery, Inc.,* 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). A court may not dismiss any claims unless the plaintiff has failed to plead sufficient facts to state a claim to relief that is facially plausible, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), that is, one that contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must show "more than a sheer possibility that a defendant acted unlawfully," *Iqbal*, 556 U.S. at 678, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555. If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570. Finally, because Thomas is proceeding *pro se*, his pleadings "'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nonetheless, a *pro se* litigant must still state a plausible claim for relief. *See, e.g., Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). Put another way, the Court's "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to

re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (alteration in original) (quoting 2 Moore's Federal Practice § 12.34[1][b], at 12-61).

## DISCUSSION

Defendants argue that Thomas's claims must be dismissed as time barred. Ordinarily, the statute of limitations is "an affirmative defense that must be raised in the answer." *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014). It is well established, however, that "a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Id.* (citing *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008)); *see NECA-IBEW Pension Tr. Fund v. Lewis*, 607 F. App'x 79, 81 (2d Cir. 2015) (summary order) (affirming dismissal on statute of limitations grounds where the plaintiff's own allegations showed that the statute of limitations had expired); *Lefebvre v. Morgan*, — F. Supp. 3d —, No. 14-CV-5322 (KMK), 2016 WL 1274584, at *16 (S.D.N.Y. Mar. 31, 2016) (citing cases); *see also* 5 Wright & Miller, Federal Practice & Procedure § 1226 (3d ed. 2004) ("[T]he current trend in the cases is to allow [the statute of limitations defense] to be raised by a motion to dismiss under Rule 12(b)(6) when the defect appears on the face of the complaint."). That is the case here.

As an initial matter, there is no real dispute that his claims accrued in 2008. (Pl.'s Opp'n 7). A Section 1983 claim accrues — and the limitations period begins to run — when "the plaintiff has a complete and present cause of action, that is, when the wrongful act or omission results in damages." *Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015); *see also, e.g.*, *id.* at 100 ("The cause of action accrues even though the full extent of the injury is not then known or predictable."); *Milani v. Int'l Bus. Machines Corp.*, 322 F. Supp. 2d 434, 451 (S.D.N.Y. 2004) (noting that a claim based on an adverse employment decision "accrues on the date that [the]

adverse employment determination is made and communicated to the plaintiff"), *aff'd*, 137 F. App'x 430 (2d Cir. 2005). Here, the wrongful conduct that Thomas alleges resulted in damages no later than April 14, 2008, when he was temporarily reassigned to the "rubber room." (Am. Compl. ¶ 137). Thus, Thomas presumptively had three years from that date to file suit. *See, e.g.*, *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 79 (2d Cir. 2015) (noting that the statute of limitations for Section 1983 claims is based on state law and, in New York, the limitations period is three years). As he did not file his original complaint until November 13, 2015 — more than three years after that date — his claims are, at a minimum, *prima facie* time barred.

Thomas does not really quarrel with that conclusion, but rather argues that his claims are saved by the doctrines of equitable tolling and equitable estoppel. (*See* Pl.'s Opp'n 7-16). Under New York law — which applies to those contentions, *see, e.g.*, *Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 2007) ("Although federal law determines when a section 1983 claim accrues, state tolling rules determine whether the limitations period has been tolled, unless state tolling rules would 'defeat the goals' of section 1983.") — the former doctrine applies "where a plaintiff has been prevented in some extraordinary way from exercising his rights," such that "it would have been *impossible* for a reasonably prudent person to learn about his or her cause of action." *Pearl v. City of Long Beach*, 296 F.3d 76, 85 (2d Cir. 2002). In a related but slightly different vein, the doctrine of equitable estoppel is available "where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay bringing his lawsuit." *Dillman v. Combustion Eng'g, Inc.*, 784 F.2d 57, 60 (2d Cir. 1986); *see Abbas*, 480 F.3d at 642 (stating that equitable estoppel applies when a "plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action"). Under either doctrine, "[d]ue diligence on the

7

part of the plaintiff in bringing an action . . . is an essential element of equitable relief." *Abbas*, 480 F.3d at 642.

Given the undisputed record in this case, Thomas cannot take advantage of either doctrine. First, under the doctrine of equitable tolling, the statute of limitations begins to run when "the plaintiff either acquires actual knowledge of the facts that comprise his cause of action or should have acquired such knowledge through the exercise of reasonable diligence after being apprised of sufficient facts to put him on notice." *Cerbone v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45, 48 (2d Cir. 1985); *accord Pearl*, 296 F.3d at 82. Here, although Thomas did not obtain an actual copy of the March 14, 2008 PTA letter until July 2015, it is undisputed that he knew of its existence as early as March 27, 2008, when he was notified about the psychological examination to be conducted. (Am. Compl. ¶ 135; *see also id.* ¶ 127 (admitting that Thomas was "aware of the allegations" in the PTA letter as early as October 2008); *id.* ¶¶ 161-62 (same); *id.* ¶ 206 (admitting that, as of June 2010, Thomas was aware that the PTA letter had been a cause of an investigation and the psychological examination)). Further, the 2011 Whistleblower Decision makes clear that, by at least August 2010, Thomas knew the substance of the PTA letter and was already effectively alleging that Jimenez, Kwan, and Koss conspired to retaliate against him. (2011 Whisleblower Decision 1, 7). In other words, Thomas knew the basics of his claims well more than three years before he filed his original complaint, even if he was not yet privy to all of the potentially relevant facts. *See Pearl*, 296 F.3d at 84 (noting that there is an "important distinction between fraudulent concealment of the *existence* of a cause of action and fraudulent concealment of *facts* that, if known, would *enhance* a plaintiff's ability to prevail as to a cause of action of which the plaintiff was previously aware" (emphases added)).

Nor can Thomas avail himself of equitable estoppel.  "To invoke equitable estoppel, a plaintiff must show that: '(1) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (2) the plaintiff reasonably relied on that misrepresentation to his detriment.'" *Ellul*, 774 F.3d at 802 (quoting *Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir. 1995)).  Significantly, the defendant's "fraud, misrepresentations, or deception must be affirmative and specifically directed at preventing the plaintiff from bringing suit; failure to disclose the basis for potential claims is not enough." *Universitas Educ., LLC v. T.D. Bank, N.A.*, No. 15-CV-5643 (SAS), 2016 WL 80210, at *2 (S.D.N.Y. Jan. 5, 2016).  Given the undisputed facts here, Thomas cannot meet those requirements.  For one thing, he points only to the conduct of SCI (including its alleged refusal to disclose the PTA letter until it was required to do so pursuant to his FOIL request and its statement that it "found nothing to substantiate" his retaliation allegations (*see* Pl.'s Opp'n 14-15, 18)), but SCI is not a Defendant in this suit.  *See Abbas*, 480 F.3d at 642 ("If a plaintiff cannot articulate[] any acts *by defendants* that prevented [him] from timely commencing suit then he has failed to meet [his] burden of showing that [he was] wrongfully induced by defendants not to commence suit." (emphases added)).  Second, and in any event, Thomas cannot plausibly allege that SCI's actions were directed at preventing him from timely filing suit, let alone that they actually did prevent him from timely filing suit.  After all, as discussed above, he knew about the general contents of the PTA letter and Defendants' alleged retaliation well before November 14, 2012, three years before he ultimately filed suit.

## CONCLUSION

The Court has considered all of Thomas's arguments with respect to the timeliness of his claims and finds them to be without merit.  Put simply, looking only at the face of the Amended Complaint, it is clear that Thomas's claims are time barred.  *See Mosdos Chofetz Chaim, Inc. v.*

9

*RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 209 (S.D.N.Y. 2014) (noting that a pre-answer motion to dismiss on statute of limitations grounds may be granted "if it is clear on the face of the complaint that the statute of limitations has run").  Accordingly, Defendants' motion to dismiss is GRANTED, and the Amended Complaint is dismissed in its entirety.  In light of that result, the Court need not and does not reach Defendants' alternative grounds for dismissal, including *res judicata* and failure to state a claim.

This Court certifies, pursuant to Title 28, United States Code, Section 1915(a)(3), that any appeal from this Memorandum Opinion and Order would not be taken in good faith, and *in forma pauperis* status is thus denied.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is directed to terminate Docket Nos. 22 and 27, to close this case, and to mail a copy of this Memorandum Opinion and Order to Thomas.

SO ORDERED.

Date: August 31, 2016
      New York, New York

JESSE M. FURMAN
United States District Judge